## IN THE UNITED STATES DISTRICT COURT
## FOR THE  DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| NEXUS SERVICES, INC. | ) | |
| | ) | |
| and | ) | |
| | ) | |
| LIBRE BY NEXUS, INC. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| CONSUMER FINANCIAL PROTECTION | ) | |
| BUREAU | ) | |
| | ) | |
| and | ) | |
| | ) | |
| RICHARD CORDRAY, IN HIS OFFICIAL | ) | |
| CAPACITY AS DIRECTOR OF THE CONSUMER | ) | |
| FINANCIAL PROTECTION BUREAU | ) | |
| | | |
| Defendants. | | |

## COMPLAINT

Nexus Services, Inc. ("Nexus Services") and Libre by Nexus, Inc. ("Libre, and collectively with Nexus Services, the "Nexus Plaintiffs"), by counsel, submit their Complaint against Defendants Consumer Financial Protection Bureau (the "CFPB") and Richard Cordray in his official capacity as the Director of the Consumer Financial Protection Bureau ("Director"), and in support thereof state as follows:

## INTRODUCTION

1.     Libre is the largest and most successful for-profit program providing services for persons detained in immigration proceedings in the United States. Unlike criminal proceedings, detainees in immigration matters are often required to post, as collateral, 100% of the bond set,

which can exceed $25,000. Most detained immigrants cannot post such large bond amounts, as they typically lack sufficient cash or collateral. Libre transformed the immigration bond industry by providing a comprehensive support system that includes, among other things, language translation services, community integration services, referral assistance to pro bono legal counsel, personal counseling, and other personalized services. Libre clients are able to secure bonds through licensed and regulated bail bond companies. Libre indemnifies these bail bond companies to induce the companies to post bond. Libre's integrated support system has proved so successful that it enjoys the lowest rate of bond failures in the industry — less than 1.3%.

2.       On August 22, 2017 the CFPB served the Nexus Plaintiffs with a civil investigative demand (the "Nexus CID") pursuant to its purported authority under 12 C.F.R. § 1080.6(e) and 12 U.S.C. § 5562(f). The Nexus CID was premised on the mistaken belief that the Nexus Plaintiffs provide or extend credit to consumers, and sought a breathtakingly large number of documents and information related to the Nexus Plaintiffs' operations.

3.       After conducting a "meet and confer" with the CFPB, the Nexus Plaintiffs filed their Petition to Set Aside or Modify the Nexus CID on September 8, 2017 (the "Petition"). The Petition explained in detail that the CFPB had exceeded its jurisdiction in numerous respects and, therefore, the Nexus CID was unenforceable. Not surprisingly, on October 11, 2017, the CFPB denied the Petition. A civil investigative demand (a "CID") issued by the CFPB is not self-executing, and the CFPB must institute enforcement proceedings in a U.S. District Court to enforce a CID. *See* 12 C.F.R. § 1080.10. As of the date of this filing, the CFPB has taken no action to enforce the Nexus CID.

4.       Instead, the CFPB is boldly circumventing judicial scrutiny of its actions. The CFPB has used a number of inappropriate, nefarious tactics to obtain the information it sought in

the Nexus CID by any means. First, the CFPB has contacted Nexus customers ("Program Participants") seeking information about the Nexus Plaintiffs. Upon information and belief, in certain instances, the CFPB attempted to induce Program Participants to allege that the Nexus Plaintiffs had acted wrongfully. Second, the CFPB contacted a bondsman working for an insurance company with which the Nexus Plaintiffs do business in order to circumvent the Nexus CID and obtain information about the Nexus Plaintiffs. Third, the CFPB issued a separate CID (the "California CID") to counsel for the plaintiffs in a class action suit pending against Libre in the U.S. District Court for the Northern District of California, styled *Vasquez v. Libre by Nexus, Inc.*, Case No. 4:17-cv-00755-CW. The California CID seeks deposition transcripts and exhibits relating to the Nexus Plaintiffs. Fourth, the CFPB issued yet another CID to a bondsman with whom Libre has worked (the "Bondsman CID"). Rather than defend the propriety of the Nexus CID through the courts, the CFPB is seeking to avoid judicial review of its actions by engaging in this improper third-party discovery. The CFPB should be enjoined from doing so.

5.      The Nexus Plaintiffs request that the Court enjoin the CFPB from evading proper procedural avenues to enforce the Nexus CID. The Court should issue an injunction preventing the CFPB from seeking information covered by the Nexus CID using improper third-party discovery, including the California CID, the Bondsman CID or similar CIDs which the CFPB will inevitably issue without judicial intervention.

6.      In addition to enjoining the CFPB from engaging in improper third party discovery, the Court should issue a declaration holding that the Nexus CID is invalid for three reasons. First, the CID is a product of the CFPB, an unconstitutionally structured agency, and therefore unenforceable. Second, the CFPB lacks jurisdictional supervisory and enforcement authority over the Nexus Plaintiffs and to investigate the matters contained in the Nexus CID. 12

U.S.C. § 5517(f)(1); 12 U.S.C. § 5531(a). The CFPB has authority to prevent a covered person or service provider from committing or engaging in an unfair, deceptive, or abusive act or practice under Federal law in connection with any transaction with a consumer for a "consumer financial product or service," or the offering of a consumer financial product or service. The Nexus Plaintiffs are (1) not a "covered person"; and (2) do not offer or provide "consumer financial products or services" and, therefore, are not subject to the jurisdiction of the CFPB, including the Nexus CID. Third, the Nexus CID is excessively vague and overbroad. A CID must "state the nature of the conduct constituting the alleged violation which is under investigation and the provision of law applicable to such violation." 12 U.S.C. § 5562(c)(2); *see also U.S. v. Morton Salt Co.*, 338 U.S. 632, 652 (1950). Here, the Nexus CID targets "persons" who may provide "services" to bonding companies. The Nexus CID does not provide the Nexus Plaintiffs proper notice as to the subject of the investigation.

## PARTIES

7.      The Nexus Plaintiffs are Virginia corporations with their principal place of business in Verona, Virginia.

8.      Libre is a subsidiary of Nexus Services.

9.      Defendant CFPB is an agency of the United States charged with enforcing federal consumer financial laws. Its principal office is located in the District of Columbia.

10.      Defendant Richard Cordray is the Director of the CFPB. He is sued in his official capacity.

## JURISDICTION AND VENUE

11.      This Court has jurisdiction over this case under 28 U.S.C. §§ 1331 and 2201.

12.      Venue is proper in the District of Columbia under 28 U.S.C. § 1391(b) and (e).

## STATEMENT OF FACTS

Nexus Plaintiffs

13.     The Nexus Plaintiffs are in the business of, among other things, assisting detained persons in obtaining immigration bonds.

14.     These immigration bonds are issued by licensed bonding and surety companies, which have no affiliation whatsoever to the Nexus Plaintiffs.

15.     On information and belief, the bonding and surety companies are all licensed and regulated by state insurance regulators.

16.     The Nexus Plaintiffs' immigration bond guaranty services are provided by Libre.

17.     Immigration bonds have historically been difficult to obtain due to the lack of resources available to either the detainee or his or her family members, and due to the perceived high risk of the detainee failing to comply with the terms of a bond.

18.     Typically, the full amount of an immigration bond must be posted as collateral before an immigration detainee will be released, making the posting of immigration bonds very difficult in many cases. *See* **Exhibit A, Declaration of Erik Schneider**, ¶ 3.

19.     In an effort to address the historical difficulty that immigration detainees face in obtaining a bond, Libre provides a bond guaranty program for persons detained in immigration proceedings in the United States though an immigration services arrangement. Libre does not act as a bail bondsman, nor does it post bonds, and it is not a surety company. Rather, Libre assists detainees by providing a broad range of services and obtaining an immigration bond by providing a bonding company and its surety with indemnification from loss, so that rather than the full amount of the bond, the detainee pays a small portion, including Libre's service fee. *See* **Exhibit A, ¶¶ 4-6.**

5

20.     While all Program Participants are required to comply with a monitoring program, in certain circumstances, where an immigration detainee does not have existing ties to a community or family members that may help ensure a timely compliance with the administrative requirements imposed by Immigration and Customs Enforcement, Libre may require a Program Participant, as a condition to its bond guaranty, to participate in Libre's GPS monitoring program. **Exhibit A, ¶ 7.**

21.     However, Libre does more than just provide bond guaranties for its Program Participants. Libre also provides a variety of other services including language translation, assistance with travel arrangements, counseling, pre-paid telephone services, and life coaching.

22.     Libre does not extend credit of any kind, nor does it make loans. **Exhibit A, ¶¶ 7-9.**

23.     Although Libre periodically waives the monthly payment obligations of certain Program Participants, and even provides them assistance in times of need, such waivers serve as a permanent abatement of program fees and such other financial assistance is provided without any repayment obligation. The Nexus Plaintiffs do not extend credit to any Program Participant in any way.

24.     Without Libre's services, tens of thousands of people would be subject to detention in increasingly unsafe and overcrowded immigration detention facilities.

25.     Libre's immigration services program has proven to be successful, with a very low failure to appear rate of less than 1.3% of its clients. **Exhibit A, ¶¶ 10-11.**

The Consumer Financial Protection Bureau

26.     The CFPB enjoys broad powers, but enjoys them solely within the financial services sphere "to prevent a <u>covered person</u> or service provider from committing or engaging in

an unfair, deceptive, or abusive act or practice under Federal law in connection with any

transaction with a consumer for a consumer financial product or service, or the offering of a

consumer financial product or service." 12 U.S.C. § 5531(a) (emphasis added).

27.     The term "covered person" is defined to include "any person that engages in

offering or providing a consumer financial product or service." *Id.* at § 5481(6). A "financial

product or service" includes ten categories like "extending credit and servicing loans," and "such

other financial product or service as may be defined by the [CFPB]." *Id.* at § 5481(15)(A)(i) and

(xi).

28.     The CFPB has "all authority to prescribe rules or issue orders or guidelines

pursuant to any Federal consumer financial law." *Id.* at § 5581(a)(1)(A). There has been no

significant limit on the CFPB's power to determine that a certain act or practice utilized by the

consumer financial services community is "unfair, deceptive, or abusive." *Id.* at § 5531(a). The

Director must only have a "reasonable basis to conclude that" the act or practice "causes or is

likely to cause substantial injury to consumers which is not reasonably avoidable by consumers."

*Id.* at § 5531(c)(1)(A). The "substantial injury" must not be "outweighed by countervailing

benefits to consumers or to competition." *Id.* at § 5531(c)(1)(B).

29.     Further, the CFPB has immense investigation and enforcement authority within

the financial services community. It can "conduct hearings and adjudication proceedings." 12

U.S.C. § 5563(A). It can also issue subpoenas "for the attendance and testimony of witnesses and

the production of relevant papers, books, documents, or other material in connection with

hearings." *Id.* at § 5562(b)(1). The CFPB may issue a CID to "any person" requiring that person

to produce information or even provide oral testimony provided the Director "has reason to

believe" that the person "may be in possession, custody, or control of any documentary material or tangible things, or may have any information, relevant to a violation." *Id.* at § 5562(c)(1).

30.     The CFPB is "accorded 'extreme breadth in conducting [its] investigations.'" *United States v. Capitol Supply, Inc.*, 27 F. Supp. 3d 91, 99 (D.D.C. 2014) (quoting *Linde Thomson Langworthy Kohn & Van Dyke, P.C. v. Resolution Trust Corp.*, 5 F.3d 1508, 1517 (D.C. Cir. 1993)). A court's role is to determine "whether 'the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant.'" *U.S. Int'l Trade Comm'n v. ASAT, Inc.*, 411 F.3d 245, 253 (D.C. Cir. 2005) (quoting *United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950)).

31.     Faced with a CID, a recipient must elect whether to comply and provide what could potentially be limitless information and oral testimony; file a petition with the CFPB to set aside or modify the demand (even though it was the CFPB who issued the CID in the first place); or ignore the CID and waive any objections.

32.     There is no check on the CFPB's discretion to begin an investigation or file an enforcement action. Thus, it is of critical importance that the Director be supervised or checked by the President or other directors. As of this filing, the Director is not supervised, directed, checked, or monitored in any way by anyone.

The Pending PHH Corp. Lawsuit

33.     On October 11, 2016, the Court of Appeals for the District of Columbia Circuit "conclude[d] that the CFPB is unconstitutionally structured because it is an independent agency headed by a single Director." *PHH Corp. v. CFPB*, 839 F.3d 1, 36 (D.C. Cir. 2016). The D.C. Circuit held that the CFPB could continue to function if the President of the United States had "the power to supervise and direct the Director of the CFPB, and . . . remove the Director at will

8

at any time." *Id.* at 69. The Court of Appeals found that it could impose this fix and ordered that

it be put into effect "by severing the for-cause removal provision from [12 U.S.C. § 5491(c)(3)

('The President may remove the Director for inefficiency, neglect of duty, or malfeasance in

office')]." *Id.*

34.     The CFPB filed a petition for rehearing *en banc* on November 18, 2016, that has

delayed the implementation of the decision in the *PHH Corp.* case.

35.     The CFPB currently continues to exercise unconstitutional authority against

"persons" like the Nexus Plaintiffs and impose burdensome requirements and irreparable injuries

on those persons.

<u>The Nexus CID</u>

36.     On August 22, 2017, the Nexus Plaintiffs received the Nexus CID.

37.     The Nexus CID sets forth the CFPB's purpose in issuing the CID as follows:

" . . . to determine whether persons who provide products or services related to

bonds posted on behalf of detainees are extending credit or offering to extend credit [and]

whether such person, in connection with marketing or selling these products or services

to consumers or enforcing their terms and conditions have engaged or are engaging in

unfair, deceptive or abusive acts and practices . . ." **Exhibit B.**

38.     On August 30, 2017, counsel for the Nexus Plaintiffs, along with a representative

from the Nexus Plaintiffs, participated in a lengthy phone conference with representatives of the

CFPB to "meet and confer" to resolve issues surrounding the Nexus CID in accordance with

CFPB's requirements.

39.     As indicated in counsel's 12 C.F.R. § 1080.6 Statement attached hereto as

**Exhibit C**, Counsel for the Nexus Plaintiffs provided representatives for the CFPB, in detail, the

reasons that  compliance with certain requests in the Nexus CID would be extraordinarily burdensome, prohibitively expensive, and significantly time-consuming for the Nexus.

40.    Specifically, the requests discussed on August 30 (the "requests at issue") as being overly broad and unduly burdensome were:

- Interrogatory 6: Identify the number of new clients who obtained products or services related to an immigration bond from the Company during each month of the Applicable Period. The Applicable Period is defined in the CID as January 1, 2014 until the date of full and complete compliance with the CID.

- Requests for Written Reports 1: In a spreadsheet, provide the following information for all former employees of the Company who were employed by the Company at any point during the Applicable Period:
    a. The name of the individual;
    b. The individual's last known contact information (address, telephone numbers, email addresses);
    c. All positions held by the individual and the associated geographic territory, if any;
    d. The time period during which the individual was employed by the Company;
    e. Whether the individual was voluntarily terminated, and if so, the reason for termination.

- Requests for Written Reports 2: In a spreadsheet, provide the following information for all current employees whose job responsibilities include meeting clients in person:
    a. The name of the individual;
    b. The individual's contact information (address, telephone numbers, email addresses);
    c. All positions held by the individual at the Company and the associated geographic territory, if any;
    d. The time period during which the individual held each position identified in subpart (c).

- Requests for Written Reports 4: In a spreadsheet, provide the following information for all individuals who are current clients or were clients of the Company at any point during the Applicable Period who obtained products or services related to an immigration bond from the Company:

    a.  The name of the individual;

    b.  The individual's contact information (address, telephone numbers, email addresses);

    c.  Whether the individual is a current or former client;

    d.  All products or services related to an immigration bond that the individual obtained from the Company;

    e.  Date of enrollment in each product or service identified in subpart (d);

    f.  Date of termination of each product or service identified in subpart (d);

    g.  All payments made by or on behalf of the client to the Company, and for each payment, state:

        i.   The date of the payment;

        ii.  The amount of the payment;

        iii. The purpose of the payment.

- Request for Documents 3: All collateralization agreements between the Company and any client.

- Request for Documents 4: All documents, other than collateralization agreements and bank statements, memorializing any payment to the Company by a client (a) credited toward the client's bond; or (b) over and above the monthly GPS fee, other than initial payments to enroll in the Company's immigration bond program.

- Request for Documents 7: All documents memorializing communications with clients or potential clients who were offered products or services related to an immigration bond, including, without limitation, written logs, databases, sound recordings of phone calls, text messages, emails, and instant and social media messages.

*See* **Exhibit D (Petition to Set Aside or Modify Civil Investigative Demand, pp. 9-10.**

    41.    To date, the Nexus Plaintiffs and the CFPB have not come to an agreement regarding any production related to the Nexus CID following the meet and confer process. Accordingly, on September 8, 2017, the Nexus Plaintiffs filed their Petition. **Exhibit D**.

24463/3/8196771v1

The CFPB's Actions in Response to Nexus Plaintiffs' Petition

42.     On October 11, 2017, the Director, responding on behalf of the CFPB, issued a Decision and Order on the Petition, denying the Petition and demanding that the Nexus Plaintiffs produce all information responsive to the Nexus CID. **Exhibit E**.

43.     Pursuant to 12 C.F.R. § 1080.10 and 12 U.S.C.S. § 5562(e), in the event a person fails to comply with a CID, the CFPB may file a petition for enforcement in a United States District Court.

44.     The CFPB has filed no such petition for enforcement as it relates to the Nexus CID.

45.     Without regard for the procedural requirements of filing a petition for enforcement in court, the CFPB, knowing that the Nexus Plaintiffs objected to the Nexus CID on a number of grounds, proceeded to conduct its investigation against the Nexus Plaintiffs by other means.

46.     Specifically, the CFPB contacted at least one of the Program Participants in an effort to elicit negative information about the Nexus Plaintiffs. An Affidavit of a Program Participant is attached hereto as **Exhibit F**.

47.     Understandably, Program Participants are worried about government agencies contacting them for any reason given the fact that many of them are seeking asylum and are facing removal proceedings initiated by the executive branch of the US government. *See* **Exhibit F, ¶¶7, 13.**

48.     According to the Program Participant, the individual from the CFPB made the Program Participant feel like the CFPB thought Libre engaged in wrongful actions. Further, the

individual from the CFPB suggested (by the way questions were asked) that Libre was taking advantage of the Program Participant. *See* **Exhibit F, ¶ 17.**

49.     The CFPB contacted the Program Participant on August 28, 2017 at 2:50 p.m. *See* **Exhibit F, ¶11.**

50.     In addition, on September 14, 2017, the CFPB contacted Marco LiMandri, a bail bondsman from San Diego. Mr. LiMandri is not employed with the Nexus Plaintiffs and owns his own bail bond company, Big Marco Bail Bonds. **Exhibit G.**

51.     The individual who contacted Mr. LiMandri, was Hai Binh T. Nguyen, an investigator and lawyer for the CFPB. *See* **Exhibit G.** Ms. Nguyen had an individual named "Gordon" or "George" on the line with her when she called Mr. LiMandri. *Id.*

52.     On information and belief, the individual on the phone with Ms. Nguyen was Donald Gordon, another investigator and lawyer for the CFPB.

53.     Ms. Nguyen asked Mr. LiMandri questions about immigration bonds and the Nexus Plaintiffs. *Id.* Mr. LiMandri declined to provide her any information about the Nexus Plaintiffs until such time as he could speak with an attorney. *Id.*

54.     Additionally, on October 5, 2017, the CFPB issued the California CID, which is directed at a law firm that is currently representing plaintiffs in a pending class action lawsuit against Libre by Nexus, Inc. **Exhibit H.** The suit is pending in the United States District Court for the Northern District of California, and is styled *Vasquez v. Libre by Nexus, Inc.,* Case No. 4:17-cv-00755-CW (the "California Lawsuit").

55.     The California CID was signed by Jeffrey Paul Ehrlich and the Bureau Counsel listed on the California CID are Hai Binh Nguyen and Donald Gordon.

13

56.     A Stipulated Protective Order for Standard Litigation was entered in the

California Lawsuit on June 15, 2017 to protect from disclosure certain confidential Protected

Material, defined as "any Disclosure or Discovery Material that is designated as

CONFIDENTIAL.'" **Exhibit I.**

57.     Protected under the Protective Order, among other things, are "any testimony,

conversations, or presentations by Parties or their Counsel that might reveal Protected Material."

58.     Notwithstanding the fact that the deposition transcripts were designated as

"Confidential" under the Protective Order, the CFPB demanded production of the following

information:

> For each deposition taken by any party in the *Vasquez* case, produce:
>    a.     A complete, final transcript;
>    b.     All exhibits, if any; and
>    c.     All video recordings, if any.

**Exhibit H.**

59.     Importantly, the California CID was issued to a law firm involved in pending

litigation and who is subject to the terms of a Protective Order.

60.     Libre will also be filing an objection with regard to the California CID.

61.     On the eve of the filing of this Complaint, the CFPB issued the Bondsman CID, a

third separate CID, to Statewide Bonding, Inc., care of Brian Jerome Cole, a bondsman, to

further attempt to gain information about the Nexus Plaintiffs. *See* **Exhibit J.**

62.     Mr. Cole is not employed with the Nexus Plaintiffs.

63.     The Bondsman was signed by, predictably, Jeffrey Paul Ehrlich on October 23,

2017.

64.     On information and belief, the CFPB, by its agents, were aware of the Nexus CID

at the time it issued the California CID and the Bondsman CID.

The CFPB Does Not Have Jurisdiction to Issue or Enforce the Nexus CID

65.     If the scope of a civil demand is jurisdictionally defective, such demand is subject to challenge. *Associated Container Transp., Ltd. v. United States*, 502 F. Supp. 505, 501 (S.D.N.Y. 1980).

66.     If an entity is not a "covered person", the CFPB is expressly excluded from exercising rulemaking, supervisory, enforcement, or other authority "with respect to a person who is a merchant, retailer, or seller of any nonfinancial good or service."

67.     The term "covered person" means (A) any person that engages in offering or providing a consumer financial product or service; and (B) any affiliate of a person described in subparagraph (A) if such affiliate acts as a service provider to such person. *Id.* at § 5481(6).

68.     The term "consumer financial product or service" is, in part, defined by a laundry list of financial products or services, with the condition that such products or services must be offered or provided for use by consumers primarily for personal, family, or household purposes. *Id.* at § 5481(15).

69.     The Nexus Plaintiffs assist Program Participants by facilitating the immigration bond process.

70.     The Nexus Plaintiffs provide "nonfinancial goods or services" within the meaning of 12 U.S.C. § 5517(a).

71.     Therefore, the CFPB does not have authority over the Nexus Plaintiffs.

72.     Moreover, the Nexus Plaintiffs are neither an affiliate of, or a service provider to, a covered person within the meaning of 12 U.S.C. § 5481(6).

73.     Under 12 U.S.C. § 5481(6)(B), in order to be subject to the CFPB's authority, the Nexus Plaintiffs would need to be an "affiliate" of any covered person. The term "affiliate"

24463/3/8196771v1

means any person that controls, is controlled by, or is under common control with another person. 12 U.S.C. § 5481(6). The only entities with whom the Nexus Plaintiffs conduct business are third party bonding and surety companies. The Nexus Plaintiffs have no relation with these companies, other than on a contractual basis. Thus, the Nexus Plaintiffs do not control, nor are they controlled by, or under common control with, any of these third party bonding companies. *See* **Exhibit A, ¶12.**

74.     The Nexus Plaintiffs are also not "service providers." The term "service provider" means "any person that provides a material service <u>to a covered person</u> in connection with the offering" of a financial product or service, "including a person that – (i) participates in designing, operating, or maintaining the consumer financial product or service; or (ii) processes transactions relating to the consumer financial product or service." 12 U.S.C. § 5481(26) (emphasis added).

75.     In order to be a "service provider" an entity must provide such services to a "covered person." *Id.*

76.     The bonding companies with which the Nexus Plaintiffs deal are not covered persons.

77.     Pursuant to 12 U.S.C. § 5517(f), the CFPB has no authority to exercise any power "with respect to a person regulated by a State insurance regulator." On information and belief, the bonding companies with which the Nexus Plaintiffs transact business are regulated by state insurance regulators, at least with respect to immigration surety bonds obtained by Program Participants, and are therefore not subject to CFPB authority and cannot be covered persons.

78.     Because the bonding companies are not covered persons, the Nexus Plaintiffs cannot be a "service provider."

79.     Additionally the Nexus CID seeks information which may be related to state regulated bonding companies. The bonding companies are not under the purview of the CFPB under 12 U.S.C. § 5517(f), and therefore,  the information sought by the CFPB related to such companies is not within the reach of the CFPB.

80.     For all of the reasons set forth above, the Nexus CID is beyond the CFPB's jurisdictional reach.

<u>The Nexus CID is Overbroad and Unduly Burdensome</u>

81.     In addition to the requirements that a CID seek only reasonably relevant information be sufficiently definite, a CID cannot be unduly burdensome or unreasonably broad. *CFPB v. Accrediting Council for Independent Colleges and Schools*, 854 F. 3d 683, 688-689 (D.C. Cir. 2017).

82.     The requests do not seek reasonably relevant information, as they are not fashioned to specifically address the purpose of the investigation as provided in the Nexus CID, which is "to determine whether persons who provide products or services related to bonds posted on behalf of detainees are extending credit or offering to extend credit" and whether persons who provide these goods or services are engaged in unfair or deceptive acts or practices which violate the Consumer Financial Protection Act of 2010.

83.     Documents sought by the CFPB must be "relevant to the investigation," which investigation must be sufficiently described in the Notification of Purpose in a CID. *See CFPB v. Source for Public Data, LP*, 2010 WL 2443135 (N.D. Tex. 2017).

84.     The CFPB's requests to the Nexus Plaintiffs are not tailored to determine whether any person or entity involved with Libre is extending credit or offering to extend credit to detainees.

24463/3/8196771v1

85.     Instead, the requests at issue seek irrelevant employee data for nearly every current and former employee of the Nexus Plaintiffs, burdensome compilations of information from every single Program Participant file – in excess of 15,000 files – copies of documents from each Program Participant file and all communication records (paper and electronic) for all Program Participants.

86.     The requests at issue are also extremely broad and overly burdensome.

87.     As indicated in Erik Schneider's Affidavit (**Exhibit A**), the Nexus Plaintiffs do not use a computer software program that will simply generate reports with the requested information, either for Program Participant file management or for Program Participant payment tracking. These tasks are done in two separate computer programs that do not link up or share information. *See* **Exhibit A.**

88.     Because of the  differences between the Nexus Plaintiffs' programs, to respond to the requests would require a knowledgeable employee who would have to review every single paper file and every electronic file of every Program Participant that the Nexus Plaintiffs have had since the beginning of its operations in January 2014. This would amount to in excess of 15,000 Program Participant files.

89.     Even at an optimistic rate of ten minutes per file to check the electronic and paper copies, pull the requested documents, and save them in an acceptable format, it would take nearly 4000 working hours. This would translate to 70 days if two employees were devoted to working full time on the requests at issue. **Exhibit A, ¶¶ 17-18.**

90.     This same process would occur with the payment records of each Program Participant thus, in essence, doubling the estimated employee time to fulfill the requests at issue. **Exhibit A, ¶ 18.**

91.     With respect to Requests for Written Reports 1 and 2, a similar process would need to occur with regard to several hundred employee files. Each paper and electronic file would need to be cross-referenced to ensure accuracy of information and would then need to be saved in an acceptable format for production. This would require at least another 60 working hours. **Exhibit A, ¶ 19.**

92.     Responding to the burdensome requests at issue would, optimistically, take at least 8,060 hours of work and would cost over $204,000 to complete. **Exhibit A, ¶¶ 20-21.**

93.     The Nexus Plaintiffs do not have the spare resources to accomplish the task of responding to the Nexus CID, even if the CFPB had authority and power to enforce the Nexus CID.

<u>Harm to Nexus Plaintiffs</u>

94.     The actions outlined in paragraphs 44-64 (above) by the CFPB were an attempt to end-run the procedural requirements of 12 C.F.R. § 1080.10 and 12 U.S.C.S. § 5562(e).

95.     The Nexus Plaintiffs' business would be irreversibly damaged if the CFPB continues to contact Program Participants and seek information (from pending litigation or elsewhere) about the Nexus Plaintiffs that would lead to disclosure of the identities of Program Participants, as confidentiality of the identity of Program Participants and their protection is a keystone of the services the Nexus Plaintiffs provide.

96.     Furthermore, the Nexus Plaintiffs' business will be irreparably harmed by the CFPB if it further publicizes its investigation against the Nexus Plaintiffs. For example, on October 20, 2017 the Washington Post published an article entitled "Company accused of preying on detained immigrants is under investigation." Such press brands Nexus Plaintiffs' business as unfair, deceptive, abusive, and illegal.

97.     The Nexus Plaintiffs employ and contract with hundreds of individuals who provide various services to the companies.  The existence of the Nexus CID and its potential enforcement may cause them to seek other employment for fear that they may suffer damaged reputations or be exploited by the CFPB, which is already harassing clients of the Nexus Plaintiffs.

98.     The Nexus Plaintiffs also work with various service providers, like bail bondsmen and insurance companies, who post bond and rely on the indemnification of Libre by Nexus, as they would any indemnitor. The CFPB has already contacted Mr. LiMandri, a bail bondsman, to inquire about the Nexus Plaintiffs. In addition, the CFPB issued a CID to another bail bond agent, Brian Cole, to obtain information about the Nexus Plaintiffs. Should the CFPB continue to make such contact and/or to further publicize its investigation against the Nexus Plaintiffs, these service providers will end their relationships with the Nexus Plaintiffs. The loss of such relationships will prevent the Nexus Plaintiffs from functioning and cause additional harm to their employees as well as the many tens of thousands of individual Program Participants. It is as though the CFPB is stepping up its abusive acts, designed to damage and destroy the Nexus Plaintiffs through attacks on their business relationships.

99.     In the event the CID is upheld, the Nexus Plaintiffs would be irreparably harmed both financially and in time taken by its employees to respond to the burdensome and overly-broad CID requests at issue.

100.    Further, the CFPB made it clear when denying the Nexus Plaintiff's Petition that the CID, Petition and the CFPB's Decision would not be made confidential, thereby exposing the Nexus Plaintiffs' business practices and proprietary information, as well as the names of all of its employees and Program Participant and causing additional irreparable harm. *See* **Exhibit E.**

### COUNT I: Violation of Separation of Powers
### (Against Both Defendants)

101.    The Nexus Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs 1 through 100, as if fully set forth herein.

102.    Congress has given extensive legislative, executive, and judicial power to the CFPB. The CFPB exercises legislative power by enacting regulations that have the force of law, executive power by enforcing compliance with its own regulations, and judicial power by adjudicating enforcement actions and imposing sanctions for violations.

103.    The Constitution of the United States provides: "The executive Power shall be vested in a President of the United States of America," U.S. Const. art. II, § 1, and the President "shall take Care that the Laws be faithfully executed." *Id.* at § 3.

104.    In its current form, the President cannot ensure that the CFPB faithfully executes the laws because the President has no power to supervise or direct the Director or remove him at will.

105.    The CFPB's structure violates the separation of powers because, among other reasons, it is headed by a single Director who is unaccountable to even the President.

106.    The CFPB and Director have pursued an investigation of the Nexus Plaintiffs and others whom it perceives may have information related to the Nexus Plaintiffs; have served the Nexus Plaintiffs with a CID; have served a law firm with a CID in an effort to obtain information about the Nexus Plaintiffs; denied the Nexus Plaintiffs' verbal request to modify the overly broad and unduly burdensome terms of the CID; denied the Nexus Plaintiffs' Petition; and denied the Nexus Plaintiffs' request for confidentiality. Further, the CFPB has contacted Program Participants and a bail bondsman who work with the Nexus Plaintiffs without any regard for discretion or reasonableness.

107.    The Nexus Plaintiffs will suffer irreparable injury to their business and reputation if the CFPB publicizes its unconstitutional investigation. Further, the Program Participants' identities will be revealed if the CFPB publicizes its unconstitutional investigation, thereby adversely affecting the lives of the Program Participants and ruining the chance for the Nexus Plaintiffs to obtain additional future business. Such revelations may cause Libre Program Participants to be subject to harassment, intimidation, and even unnecessary and unfair enforcement activity.

108.    So long as the CFPB remains an independent agency headed by a single director, it will violate the Constitution's separation of powers by taking adverse action against the Nexus Plaintiffs, which it is already doing by contacting third parties to seek information about the Nexus Plaintiffs.

109.    The Nexus Plaintiffs seek entry of an Order and judgment declaring the CFPB's current structure unconstitutional and permanently enjoining the CFPB and Director from enforcing the CIDs or taking any further action against the Nexus Plaintiffs.

### COUNT II: The CFPB and Director's Actions are *Ultra Vires* Because They Exceed the Statutory Authority of 12 U.S.C. § 5481 and § 5531 (Against Both Defendants)

110.    The Nexus Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 109, as if fully set forth herein.

111.    The CFPB's authority extends only within the financial services sphere "to prevent a covered person or service provider from committing or engaging in an unfair, deceptive, or abusive act or practice under Federal law in connection with any transaction with a consumer for a consumer financial product or service, or the offering of a consumer financial product or service." 12. U.S.C. § 5531(a).

112.   "Covered person" is defined to include "any person that engages in offering or providing a consumer financial product or service" and "any affiliate of a person [that engages in offering or providing a consumer financial product or service] if such affiliate acts as a service provider to such person." *Id.* at § 5481(6). A "financial product or service" includes ten categories including "extending credit and servicing loans," and "such other financial product or service as may be defined by the [CFPB]." *Id.* at § 5481(15)(A)(i) and (xi).

113.   If an entity is not a "covered person," the CFPB is expressly excluded from exercising rulemaking, supervisory, enforcement, or other authority "with respect to a person who is a merchant, retailer, or seller of any nonfinancial good or service."

114.   If the Nexus Plaintiffs are not considered a "covered person" under 12 U.S.C. § 5517(a), the CFPB does not have authority to issue a CID.

115.   The Nexus Plaintiffs assist Program Participants by facilitating the immigration bond process via the GPS program.

116.   The Nexus Plaintiffs provide "nonfinancial goods or services" within the meaning of 12 U.S.C. § 5517(a).

117.   Therefore, the CFPB does not have authority over the Nexus Plaintiffs.

118.   Under 12 U.S.C. § 5481(6)(B), in order to be subject to the CFPB's authority, the Nexus Plaintiffs would need to be an "affiliate" of any covered person. The term "affiliate" means any person that controls, is controlled by, or is under common control with another person. 21 U.S.C. § 5481(6). The only entities with whom the Nexus Plaintiffs conduct business are third party bonding and surety companies. The Nexus Plaintiffs have no relation with these companies, other than on a contractual basis. Thus, the Nexus Plaintiffs do not control, nor are

23

they controlled by, or under common control with, any of these third party bonding companies. *See* **Exhibit A, ¶ 12.**

119.    Similarly, the Nexus Plaintiffs are not "service providers." The term "service provider" means "any person that provides a material service <u>to a covered person</u> in connection with the offering" of a financial product or service, "including a person that – (i) participates in designing, operating, or maintaining the consumer financial product or service; or (ii) processes transactions relating to the consumer financial product or service." 12 U.S.C. § 5481(26) (emphasis added).

120.    To be a "service provider" an entity must provide services to a "covered person." *Id.*

121.    The bonding companies with which the Nexus Plaintiffs deal are not covered persons.

122.    Pursuant to 12 U.S.C. § 5571(f), the CFPB has no authority to exercise any power "with respect to a person regulated by a State insurance regulator." On information and belief, the bonding companies with which the Nexus Plaintiffs transact business are regulated by state insurance regulators, at least with respect to immigration surety bonds obtained by Program Participants, and are therefore not subject to CFPB authority and cannot be covered persons.

123.    Because the bonding companies are not covered persons, the Nexus Plaintiffs cannot be a "service provider."

124.    Because the Nexus Plaintiffs are not considered a "covered person," the CID is beyond the CFPB's jurisdictional reach.

125.    An actual, justiciable controversy exists as to whether the Nexus Plaintiffs fall within the jurisdiction of the CFPB's authority pursuant to 12 U.S.C. § 5481 and § 5531.

126.    The Nexus Plaintiffs seek entry of an Order and judgment declaring that the CFPB does not have jurisdiction over them and permanently enjoining the CFPB and Director from enforcing the CIDs or taking any further action against them.

### COUNT III: Violation of the Administrative Procedure Act
### (Against Both Defendants)

127.    The Nexus Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 126, as if fully set forth herein.

128.    Under the Administrative Procedure Act ("APA"), "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. The CFPB's denial of the Nexus Plaintiffs' request for confidentiality and its decision to publish the Petition, CID, and the Director's Decision constitutes reviewable action under the APA.

129.    A federal agency's "decision to disclose" a document to the public qualifies as "reviewable agency action" pursuant to the APA. *Chrysler Corp. v. Brown*, 441 U.S. 281, 318 (1979). Accordingly, "[a] party may seek judicial review under the APA of an agency's disclosure of information when that disclosure is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Creed v. NTSB*, 758 F. Supp. 2d 1, 4 n. 4 (D.D.C. 2010) (quoting *Chrysler*, 441 U.S. at 317).

130.    The CFPB's regulations require that the Director consider whether good cause exists to maintain confidentiality of a petition to modify or set aside a civil investigative demand and the Director's decision and order related thereto. *See* 12 C.F.R. § 1080.6(g). Because the CFPB's structure is unconstitutional, it cannot make a binding good cause determination.

131.    The Director's decision that the Nexus Plaintiffs' Petition, the CID, and the Director's Decision and Order should be publicly disclosed is arbitrary, capricious, and contrary

24463/3/8196771v1

to law. The Court should vacate the CFPB's decision to disclose those documents and enjoin their public dissemination.

132.    The CFPB and Director exercise unconstitutional authority because Congress made the CFPB Director removable only for cause. 12 U.S.C. § 5491(c)(3).

133.    Pursuant to 5 U.S.C. § 706(2)(B), a "reviewing court shall hold unlawful and set aside agency action, findings, and conclusions found to be contrary to constitutional right, power, privilege, or immunity."

134.    The CFPB's failure to take the proper steps to enforce its CID and instead circumvent judicial review by seeking this information from the clients and business partners of the Nexus Plaintiffs is contrary to statute and deprives the Nexus Plaintiffs of the opportunity to challenge the CID in the appropriate judicial forum.

135.    Pursuant to 5 U.S.C. § 706(2)(D), a reviewing court shall set aside agency action that was made "without observance of procedure required by law."

136.    Pursuant to 5 U.S.C. § 706(2)(A), a reviewing court shall hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

137.    The CFPB and Director's actions against the Nexus Plaintiffs exceed the statutory authority of 12 U.S.C. § 5481 and § 5531.

138.    Pursuant to 5 U.S.C. § 706(2)(C), a reviewing court shall set aside agency action that was made in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."

139.    As a result of the myriad violations of the APA outlined above, the Nexus Plaintiffs seek entry of an Order and judgment declaring that the CFPB does not have

26

jurisdiction over them, that the CFPB and Director have violated the APA, and permanently enjoining the CFPB and Director from enforcing the CIDs or taking any further action against them.

## COUNT IV: Deprivation of Due Process
## (Against Both Defendants)

140.    The Nexus Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 131, as if fully set forth herein.

141.    The Fifth Amendment to the United States Constitution guarantees that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V.

142.    The Nexus Plaintiffs have a liberty interest in being free from arbitrary actions of the CFPB in its attempt to circumvent judicial scrutiny and thereby chill the Nexus Plaintiffs' ability to (1) challenge the actions by the CFPB and its overbroad and burdensome CID, and (2) prevent irreparable harm to its reputation, business relationships, and Program Participants.

143.    On August 22, 2017, the CFPB served the Nexus Plaintiffs with the CID.

144.    The CID does not seek reasonably relevant information and is unduly burdensome and unreasonably broad.

145.    The Nexus Plaintiffs filed their Petition to Set Aside or Modify the CID on September 8, 2017, explaining in detail the reasons why the CFPB was wrong in its assumption that the Nexus Plaintiffs were engaged in extending credit to consumers, and why the CID exceeded the CFPB's jurisdiction and was therefore unenforceable.

146.    On October 11, 2017, the CFPB denied the Petition and further denied the Nexus Plaintiffs' request for confidentiality.

24463/3/8196771v1

147.    Pursuant to 12 U.S.C. § 5562(e), in the case of a failure to comply with a civil investigative demand, the CFPB is authorized to "file, in the district court of the United States . . . a petition for an order of such court for the enforcement" of the CID.

148.    The CFPB has taken no action to enforce the CID. Consequently, the Nexus Plaintiffs have been afforded no opportunity to challenge any enforcement action.

149.    Instead, the CFPB is circumventing judicial scrutiny by attempting to obtain must of the information sought by the CID using inappropriate third-party discovery.

150.    The CFPB has contacted individual Program Participants to seek information about the Nexus Plaintiffs.

151.    The CFPB has also contacted at least two bondsmen with whom the Nexus Plaintiffs do business (and just issued a CID to one of them) in order to obtain information about the Nexus Plaintiffs.

152.    Additionally, the CFPB issued another CID to counsel for plaintiffs in a class action suit pending against Libre by Nexus, Inc. in the U.S. District Court for the Northern District of California, styled *Vasquez v. Libre by Nexus, Inc.*, Case No. 4:17-cv-00755-CW, seeking deposition transcripts and exhibits relating to the Nexus Plaintiffs.

153.    Rather than attempt to enforce its CID through the courts, the CFPB is seeking to avoid judicial review by engaging in improper third-party discovery.

154.    Where a "special statutory review scheme exists . . . 'it is ordinarily supposed that Congress intended that procedure to be the exclusive means of obtaining judicial review in those cases to which it applies.'" *Jarkesy v. SEC*, 803 F.3d 9, 15 (D.C.Cir. 2015) (quoting *City of Rochester v. Bond*, 603 F.2d 927, 931 (D.C. Cir. 1979)). 12 C.F.R. § 1080.10 and 12 U.S.C. § 5562(e) provides that special statutory review scheme.

155.    Instead of instituting an enforcement action, the CFPB attempted to end-run the procedural requirements of 12 U.S.C. § 5562(e) and 12 C.F.R. § 1808.10 by engaging in improper third-party discovery.

156.    The CFPB has infringed the Nexus Plaintiffs' liberty by (1) denying the Nexus Plaintiffs' oral request to withdraw the CID and/or modify its unreasonable terms; (2) denying the Nexus Plaintiffs' Petition; (3) denying the Nexus Plaintiffs' request for confidentiality; and (4) circumventing judicial review provided by statute and instead conducting improper third party discovery in an attempt to publicly gain information about the Nexus Plaintiffs. These actions do and will continue to deprive the Nexus Plaintiffs of liberty without due process.

157.    The unduly broad nature of the CID will require an inordinate amount of resources in order for the Nexus Plaintiffs to respond.

158.    The Nexus Plaintiffs seek entry of an Order and judgment declaring that the CFPB and Director's actions are inconsistent with the Constitutional guarantees of Due Process and permanently enjoining the CFPB and Director from enforcing the CIDs or taking any further action against them.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiffs respectfully request that the Court:

A.  Set aside the enforcement of the CIDs

B.  Stay enforcement of the CIDs pursuant to 5 U.S.C. § 705 or otherwise preliminarily enjoin the CFPB, the Director, his employees, and his agents from enforcing the CIDs or engaging in improper discovery with third parties, pending this Court's entry of final judgment in this action;

C.  Enter final judgment in favor of Plaintiffs;

D.  Declare that the CFPB is unconstitutionally structured;

E.  Declare that the issuance of CIDs to the Plaintiffs and improper third party discovery directed at the Plaintiffs is unlawful because it is contrary to constitutional right, power, privilege, or immunity within the meaning of 5 U.S.C. § 706(2)(B); was taken without observance of procedures required by law within the meaning of 5 U.S.C. § 706(2)(D); is arbitrary, capricious, or otherwise contrary to law within the meaning of 5 U.S.C. § 706(2)(A); and is taken in excess of statutory jurisdiction, authority, or limitations within the meaning of 5 U.S.C. § 706(2)(C);

F.  Permanently enjoin the Director, his employees, and his agents from enforcing the CIDs or instituting any action against the Plaintiffs;

G.  Grant Plaintiffs such other relief as the Court deems just and proper.

NEXUS SERVICES, INC. AND LIBRE BY NEXUS, INC.

By: _____
                Of Counsel

John R. Thomas, Jr.
DC Bar #1027981
GENTRY LOCKE
900 SunTrust Plaza
P.O. Box 40013
Roanoke, Virginia 24022-0013
Tele:  (540) 983-9300
Fax:   (540) 983-9400
Email: jthomas@gentrylocke.com

Paul G. Klockenbrink, Esq.
Pending Admission *Pro Hac Vice*
GENTRY LOCKE
900 SunTrust Plaza
P.O. Box 40013
Roanoke, Virginia 24022-0013
Tele:  (540) 983-9300
Fax:   (540) 983-9400
Email:  klockenbrink@gentrylocke.com

24463/3/8196771v1

Catherine J. Huff, Esq.
Pending Admission *Pro Hac Vice*
GENTRY LOCKE
900 SunTrust Plaza
P.O. Box 40013
Roanoke, Virginia 24022-0013
Tele:   (540) 983-9300
Fax:    (540) 983-9400
Email: huff@gentrylocke.com

Mary Donne Peters, Esq.
Pending Admission *Pro Hac Vice*
GORBY, PETERS & ASSOCIATES, LLC
2 Ravinia Drive
Suite 1500
Atlanta, Georgia 30346
Tele:   (404) 239-1150
Fax:    (404) 239-1179
Email: mpeters@gorbypeters.com

    *Counsel for Plaintiffs, Nexus Services, Inc.*
    *and Libre by Nexus, Inc.*

31