# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| NEXUS SERVICES, INC. | ) | |
| and | ) | |
| LIBRE BY NEXUS, INC. | ) | |
| Plaintiffs, | ) | |
| v. | ) | Case No. 1:17-cv-02215-ABJ |
| CONSUMER FINANCIAL PROTECTION BUREAU | ) | Case No. 1:17-cv-02238-ABJ |
| and | ) | |
| RICHARD CORDRAY, IN HIS OFFICIAL CAPACITY AS DIRECTOR OF THE CONSUMER FINANCIAL PROTECTION BUREAU | ) | |
| Defendants. | ) | |

## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56, Plaintiffs Nexus Services, Inc. and Libre by Nexus, Inc., by counsel, moves for summary judgment on the grounds as set forth in its accompanying memorandum that there is no genuine dispute as to material facts pertaining to the issues addressed, and the plaintiffs are entitled to judgment as a matter of law.

Dated:  January 30, 2018

Respectfully Submitted,

NEXUS SERVICES, INC. AND
LIBRE BY NEXUS, INC.

By:   _/s/  Paul G. Klockenbrink_
Counsel

John R. Thomas, Jr., Esq. (DC Bar #1027981)
Paul G. Klockenbrink, Esq. (VA Bar #33032)
　　　(Admitted *Pro Hac Vice* 11/7/2017)
Catherine J. Huff, Esq. (VA Bar #78610)
　　　(Admitted *Pro Hac Vice* 11/13/2017)
GENTRY LOCKE
900 SunTrust Plaza, P.O. Box 40013
Roanoke, Virginia 24022-0013
Tele:　(540) 983-9300
Fax:　(540) 983-9400
Email: jthomas@gentrylocke.com
Email: klockenbrink@gentrylocke.com
Email: huff@gentrylocke.com

Mary Donne Peters, Esq. (GA Bar #478395)
　　　(Admission *Pro Hac Vice* 11/8/2017)
GORBY, PETERS & ASSOCIATES, LLC
2 Ravinia Drive
Suite 1500
Atlanta, Georgia 30346
Tele:　(404) 239-1150
Fax:　(404) 239-1179
Email: mpeters@gorbypeters.com

　　*Counsel for Plaintiffs, Nexus Services, Inc.*
　　*and Libre by Nexus, Inc.*

## CERTIFICATE OF SERVICE

　　I hereby certify that on the 30th day of January, 2018, a copy of the foregoing was

electronically filed using the ECF system, which will send notice counsel of record for

Defendants:

Re*: Nexus Services Inc. & Libre by Nexus, Inc. v. Consumer Financial Protection Bureau, et al*,
　　Case # No. 1:17-cv-02215-ABJ (USDC, D.D.C.):

　　　　　　　David A. King, Jr.
　　　　　　　Litigation and Oversight, Legal Div.
　　　　　　　CONSUMER FINANCIAL PROTECTION BUREAU
　　　　　　　1700 G. Street NW
　　　　　　　Washington, DC 20552
　　　　　　　Office: (202) 435-9289
　　　　　　　FAX (202) 435-7024
　　　　　　　Email: david.king@cfpb.gov

*Counsel for Defendants, Consumer Financial Protection Bureau &*
*Richard Cordray in his Official Capacity as Director of the Consumer*
*Financial Protection Bureau*

Re:  *Consumer Financial Protection Bureau v. Nexus Services, Inc. & Libre By Nexus, Inc.,*
     Case # No. 1:17-cv-02238-ABJ (USDC, D.D.C.):

                    Benjamin Zachary Konop (OH Bar No. 0073458)
                    CONSUMER FINANCIAL PROTECTION BUREAU
                    Office of General Counsel
                    1700 G Street, N.W.
                    Washington, DC 20552
                    Main: (202) 435-7265
                    Fax: (202) 435-7722
                    Email:  benjamin.konop@cfpb.gov

          *Counsel for Petitioner, Consumer Financial Protection Bureau*

                    */s/  Paul G. Klockenbrink*
                         Counsel

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

NEXUS SERVICES, INC.                          )
                                              )
and                                           )
                                              )
LIBRE BY NEXUS, INC.                          )
                                              )
      Plaintiffs,                          )
                                              )
v.                                            )          Case No. 1:17-cv-02215 ABJ
                                              )          Case No. 1:17-cv-02238 ABJ
CONSUMER FINANCIAL PROTECTION                 )
BUREAU                                        )
                                              )
and                                           )
                                              )
RICHARD CORDRAY, IN HIS OFFICIAL              )
CAPACITY AS DIRECTOR OF THE CONSUMER          )
FINANCIAL PROTECTION BUREAU                   )
                                              )
      Defendants.                          )

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND RESPONSE IN OPPOSITION TO DEFENDANTS' PETITION TO ENFORCE CIVIL INVESTIGATIVE DEMAND

      The Plaintiffs, Nexus Services, Inc. and Libre by Nexus, Inc. (collectively "Nexus"), by counsel, file this Memorandum of Law in support of their Motion for Summary Judgment and Response in Opposition to Defendants' Petition to Enforce Civil Investigative Demand.

## STATEMENT OF CASE

      Immigration bonds have historically been difficult to obtain due to the lack of resources available to either the detainee or his or her family member, and the perceived high risk of the detainee failing to comply with the terms of a bond. In an effort to address the historical difficulty that immigration detainees face in obtaining a bond, Nexus developed a bond

securitization program for persons detained in immigration proceedings in the United States.[1]

Nexus does not act as a bail bondsman, nor does it post bonds, and it is not a surety company.

Rather, Nexus assists detainees in obtaining an immigration bond by providing a bonding

company and its surety with financial guarantees, so that rather than pay the full amount of the

bond, the detainees (also referred to as Program Participants) pay a bond premium of typically

10--15% of the face value of the bond to the bondsman, in addition to Nexus program fees.

The program, which is provided at a cost, allows the Program Participants to remain free

from incarceration to be with their families and loved ones.  Nexus does not extend credit of any

kind, nor does it make loans. Without these services, thousands of people would be subject to

detention in increasingly unsafe, overcrowded, and frankly inhumane immigration detention

facilities.  The program has proven to be successful, with a very low failure to appear rate of its

Program Participants.

However, even after being provided sworn testimony regarding the facts about Nexus'

business, the Consumer Financial Protection Bureau ("CFPB") seeks a complete listing of all

Program Participants and employees that Nexus has ever had, including detailed information

regarding payments, contact information and more.[2]  In essence, while being presented evidence

that is has no jurisdiction over Nexus, the CFBP seeks information that goes well beyond

---

[1] The Nexus program has freed almost 20,000 immigrants from detention so they can support themselves and their families rather than suffer in overcrowded and often unsafe detention centers. In so doing, Nexus has saved the American taxpayers an estimated $600-million, which would otherwise have been spent to house, feed, clothe and care for the immigrants. *See* **Exhibit A, Declaration of Erik Schneider, ¶7.¶**

[2] Nexus has objected to the CFPB's broad requests because, among other things, the requests put Nexus's clients at increased risk for deportation at best and injury and death at worst because many of the Nexus clients are seeking asylum for political or gang-related violence. *See* **Exhibit A, ¶¶5-6.**  Because Nexus understands that this Court desires the issue of the CFPB's jurisdiction to issue the CID to be briefed as a preliminary matter, Nexus reserves the right to provide further and additional briefing on this issue should the CFPB be determined to have jurisdiction, which of course, Nexus disputes.

establishing its jurisdiction and demands all of Nexus' files and financial information regarding a vulnerable population be turned over wholesale at significant expense and burden to Nexus.

## PROCEDURAL HISTORY

On August 21, 2017, the Consumer Financial Protection Bureau ("CFPB") issued a Civil Investigative Demand ("CID") to Nexus. *See* **Exhibit B.** After informal efforts to resolve the jurisdictional, overbreadth and relevancy issues of the CID were unsuccessful, on September 8, 2017 Nexus filed a petition to set aside or modify the CID. *See* **Exhibit C.** In response, on October 11, 2017, the CFPB issued its decision denying the petition. *See* **Exhibit D.** The CFPB did not immediately file a Court petition to enforce the CID, rather, the CFPB sought to obtain the same information that was objected to by Nexus through third-party discovery of the Nexus' vendors and Program Participants.

On October 25, 2017, Nexus filed a lawsuit (Case No. 1:17-cv-2215) challenging the constitutional structure and jurisdiction of the CFPB over Nexus, violations of the Administrative Procedure Act, as well as deprivation of due process. Five days later on October 30, 2017, the CFPB filed a Petition to Enforce the CID (Case No. 1:17-cv-2238). On December 4, 2017, the Court held a scheduling conference, during which the CFPB agreed to suspend its investigation into Nexus and its affiliates, including contacting Program Participants or engaging in third-party discovery between third parties pending the briefing of whether CFPB had the jurisdictional authority to issue the CID to Nexus. (*See* **Exhibit E, Transcript of Hearing held on December 4, 2017, ¶¶ 7, 8, 9, 11**).

## SUMMARY OF THE ARGUMENT

Nexus does not fall within the CFPB's jurisdiction. Nexus is not the sort of "covered person" that is within the purview of the CFPB, as it provides "nonfinancial goods or services."

3

Further, Nexus is not an affiliate of covered persons such that the CFPB could extend its reach through mere association. Nexus does not extend or offer to extend credit and simply does not provide the sort of financial products and services the CFPB regulates. To hold otherwise would be to create a precedent that would bolster the CFPB's nearly already-unfettered authority. There are hundreds of organizations across the country that do fall within the CFPB's broad authority. Nexus, however, is simply not one of them. The facts of Nexus' business and the services it provides are undisputed. Thus, the CFPB's efforts are better spent elsewhere, and given its clear lack of jurisdiction over Nexus, Nexus is entitled to summary judgment as a matter of law. For the same reasons, Nexus objects to the CFPB's Petition for Enforcement. Without authority over Nexus, the Petition is moot.

## STATEMENT OF FACTS

The pertinent facts are stated in Nexus' Complaint and below:

## I.   INTRODUCTION

Nexus is a small successful for-profit business that provides services for persons detained in immigration proceedings in the United States.[3] Nexus is in the business of, among other things, assisting detained persons in obtaining immigration bonds. Immigration bonds have historically been difficult to obtain due to the lack of resources available to either the detainee or his or her family members, and due to the perceived high risk of the detainee failing to comply with the terms of a bond. *See* **Exhibit A, ¶¶ 3, 8, 19 & 20.**

Unlike criminal proceedings, detainees in immigration matters are often required to pay the full face amount of the bond or post, as collateral, more than 100% of the bond set by the

---

[3] Nexus has solved a persistent problem – how to humanely securely and efficiently manage the release of thousands of undocumented immigrants for whom a bond has been set but who languish immigration detention centers because they cannot pay or collateralize their bonds.

4

immigration court. Immigration bonds can often exceed $25,000. Understandably, most detained immigrants cannot post such large bond amounts. In an effort to address the historical difficulty that immigration detainees face in obtaining a bond, Nexus provides a bond guaranty program for persons detained in immigration proceedings in the United States through an immigration services arrangement. As part of this contractual services agreement, Nexus provides detainees a broad range of services and secures an immigration bond by providing a bonding company and its surety with indemnification from loss.  Thus, rather than paying the full amount of the bond at the time that they seek to be released, the detainee pays a small portion, including Nexus' fees. *See* **Exhibit A, ¶¶ 3-4, 8, 15-17.**

Nexus Program Participants are able to secure bonds through licensed and regulated bond companies. These companies have no affiliation whatsoever to Nexus and are companies regulated by state insurance regulators. Nexus indemnifies these bail bond companies to induce the companies to post bond. Nexus' integrated support system has proved so successful that it enjoys the lowest rate of bond failures in the industry – less than 1.3%. *See* **Exhibit A, ¶¶ 9-10, 15.**

## II.   NEXUS DOES NOT OFFER OR SELL CONSUMER FINANCIAL PRODUCTS

The CFPB's own website states that it is a U.S. Government Agency that makes sure "banks, lenders and other financial companies treat you fairly."  Nexus is not a bank, nor does it lend money and certainly is not a "financial company."  Nexus does not offer or sell consumer financial products.  Nexus does not extend nor offer credit to Program Participants of any kind, nor does it make loans.  Nexus neither acts as a bail bondsman, nor does it post bonds, and is not a surety company.  Nexus is not a bond company, nor is it an insurance company.  Nexus is a private company that helps the detained immigrant obtain an immigration bond from a licensed

5

bonding company that is in turn backed by a federally-approved insurance company, which acts as a surety. *See* **Exhibit A, ¶¶ 11-13.**

Nexus merely assists its Program Participants by facilitating the immigration bond process. Nexus conducts business with third party bonding and surety companies, which are regulated by state insurance regulators. Nexus has no relation with these companies other than a contractual basis. Nexus does not control, nor is it controlled by, nor is it under any kind of control by any of these third-party bonding companies. *See* **Exhibit A, ¶¶ 3, 10, 14, 18.**

### III. NEXUS' SERVICES

Nexus' Program Participants voluntarily enter into contracts, which make clear that Nexus will provide indemnification for the immigration bond (in place of the Program Participant providing collateral to the surety), thereby allowing the bond to be posted and facilitating the Program Participant's release from immigration custody. The contract further indicates that the bond will be posted by a particular bonding company and that Nexus will sign as guarantor of the Program Participant's bond and indemnify the surety and bail agent from loss. Nexus' indemnification is guaranteed contractually and by various collateral pledged to the licensed sureties and bail agents that Nexus indemnifies. Rather than paying the full amount of the bond, Nexus' Program Participants pay a bond premium of typically 10-15% of the face value of the bond to the bondsman. *See* **Exhibit A, ¶¶ 15-16.**

Program Participants also pay service fees to Nexus, including Nexus' monthly program fees, which may include fees for Nexus' GPS monitoring program. In exchange for the fees paid by the Program Participants, Nexus provides a wide range of services for its Program Participants, which include the following:

1. At all hours of the day or night, Nexus picks up the Program Participants from

6

the detention centers, many of which are remote. This is particularly important in cold weather states in which Program Participants are released in the same clothes they were arrested in and are prohibited from reentering the facility once they have been released. Program Participants are provided mobile phones to contact their families and to facilitate their reentry into society, and are also provided essential toiletries. Frequently, Nexus provides clothing, food, shelter and ultimately the transport of undocumented people released from ICE custody to their families. This begins to provide some humanity back to the individuals after they have endured a process which utterly strips all humanity and dignity from them.

2. Nationwide logistics call and support centers are available 24 hours a day to help Program Participants with various needs, including such basic concepts as paying a water bill. Many Program Participants have never lived in housing that requires payment of a water bill or other utilities.

3. Investigative services regarding those individuals who may seek to harm its Program Participants. Many of Nexus' Program Participants are abused and are afraid to come forward for fear of involving the police and Nexus helps them interface and report transgressions so their concerns can be heard.

4. Travel services for Program Participants, sometimes across the country, to ensure that they appear at their hearings and provide professional staff to escort them to meetings with deportation officers. These staff escorts often result in the Program Participants being allowed to avoid a deportation and remain free to work on their case.

24463/18/8304373v1

5. Computer and English language training assistance.

6. Help with medical expenses.

7. Counseling, life coaching and pre-paid telephone services.

8. Assistance during hurricanes and other natural disasters.

9. Referral to *pro bono* legal services offered by, among others,  Nexus

    Caridades Attorneys, Inc., an independent law firm which is funded by Nexus.

    *See* **Exhibit A, ¶¶ 16-17.**

## IV.  NEXUS' KEY VENDORS

There are a limited number of bonding companies that can post immigration bonds.  The surety companies must be listed on the approved Department of the Treasury's Listing of Approved Securities often referred to as the T-List.  The agent can post bonds across the country using E-Bonds, a government system that allows authorized sureties to post bonds electronically. *See* **Exhibit A, ¶18.**

There is even a smaller number of Treasury- authorized surety companies that work with Nexus.  Notwithstanding Nexus' agreement to fully indemnify the insurance companies if the Nexus Program Participant fails to voluntarily appear in court, conservative insurance carriers are reluctant to secure civil immigration bonds because of the traditionally high rate of failure to appear by undocumented immigrants.  Additional reasons for this reluctance include:

1. Nexus is a relatively small company with an extremely unique business.

   Conservative insurance companies are hesitant to secure bonds for

   individuals who typically have no job, no house and no collateral and who

   are facing legal proceedings to remove them from the United States.

2. In most states, bond premiums are capped, which means the insurance

8

carrier is not going to make more money if its takes on a greater risk. Therefore, from the insurance carrier's perspective, accepting the financial guarantee from a small company in a unique niche business is often not worth the risk.

3. Nexus needs the bonding and surety company to allow it to manage the Program Participants. Nexus works closely with the Program Participants and needs the bonding companies to step back without the threat of "bounty hunters" pursuing them. Many bonding companies will not allow that type of discretion and, therefore, Nexus' relationship with their existing vendors is critical. *See* **Exhibit A, ¶19.**

For the few insurance companies that are qualified to serve as federal sureties and which will agree to accept Nexus' financial guarantees, Nexus must demonstrate that it has developed and deployed appropriate risk mitigation tools and services. To achieve this goal, Nexus combines the Program Participant centric support services with state-of-the-art geo-positioning (GPS) technology – similar to that used by law enforcement authorities around the United States for pre-trial programs. *See* **Exhibit A, ¶ 20.**

Nexus' Program Participants pay a monthly fee for program participation, which includes costs for services provided and monitoring. In about one-third of the cases, that monitoring includes GPS. Nexus attempts to limit the amount of time any Program Participant is monitored via a GPS device. Because immigration cases can stretch over years, Nexus establishes a maximum number of months any Program Participant can be required to make monthly program payments. Nexus' GPS vendors do not sell the equipment: they lease it to Nexus. Therefore, Nexus is responsible for the GPS unit if it is lost or destroyed and the replacement costs can be

significant. Additionally, many of Nexus' Program Participants are employed in manual labor positions which provide a significant amount of wear and tear on the equipment. If the GPS unit is broken or stops working, a Nexus employee is dispatched-sometimes to remote locations, to repair or replace the unit. *See* **Exhibit A, ¶¶ 21-23.**

## V.   CFPB SERVES NEXUS WITH CID.

On August 22, 2017 the CFPB served Nexus with a CID pursuant to its purported authority under 12 C.F.R. § 1080.6(e) and 12 U.S.C. § 5562(f). *See* **Exhibit B.** The Nexus CID was premised on the mistaken belief that Nexus provides or extends credit to consumers, and sought a breathtakingly large number of documents and information related to Nexus' operations. *See* **Exhibit B, pp. 2-4.**

After unsuccessfully resolving the issues in dispute, Nexus filed its Petition to Set Aside or Modify the CFPB's CID on September 8, 2017 (the "Petition"). *See* **Exhibit C.** The Petition explained in detail that the CFPB had exceeded its jurisdiction in numerous respects and, therefore, the Nexus CID was unenforceable. Not surprisingly, on October 11, 2017, the CFPB denied the Petition. *See* **Exhibit D.**

## ARGUMENT

## I.   STANDARD FOR SUMMARY JUDGMENT

Under Rule 56 of the Federal Rules of Civil Procedure, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 25(a). An issue is "genuine" when the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party. *Prindle v. Carrington Mortg. Servs., LLC*, 2016 U.S. Dist. LEIS 108386, *17 (M.D. Fl. 2016) (*citing Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996)).

Certainly, not every factual dispute will defeat the motion. *McCray v. Bank of Am., Corp.*, 2017 U.S. Dist. LEXIS 54388, *13 (D. Md. 2017). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original)).

The court's function when reviewing a motion for summary judgment is "not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at *14 (*quoting Anderson*, 477 U.S. at 249). "In considering a summary judgment motion, the court may not make credibility determinations." *Id.* (*citing Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)). The trial judge has an "affirmative obligation" to "prevent 'factually unsupported claims and defenses' from proceeding to trial." *Anderson*, 477 U.S. at 317 (*quoting Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)). Summary judgment is to be granted unless a reasonable jury could return a verdict for the nonmoving party based upon the evidence presented. *McLean v. Patten Cmtys.*, 332 F.3d 714, 719 (4th Cir. 2003).

## II. THE CFPB LACKS SUPERVISORY AND ENFORCEMENT AUTHORITY OVER NEXUS.

The CFPB is tasked with regulating the offering and provision of "consumer financial products or services" under the federal consumer financial laws. 12 U.S.C. § 5491(a). The CFPB has authority to prevent a covered person or service provider from committing or engaging in an unfair, deceptive, or abusive act or practice under Federal law in connection with any transaction with a consumer for a "consumer financial product or service," or the offering of a consumer financial product or service. 12 U.S.C. § 5531(a). If an entity is not a "covered person," under 12

11

U.S.C. § 5517(a), the CFPB is expressly excluded from exercising rulemaking, supervisory,

enforcement or other authority "with respect to a person who is a merchant, retailer, or seller of

any nonfinancial good or service." At issue is whether Nexus is considered "covered person[s]."

If they are not, the CFPB does not have authority over them and, thus, cannot investigate them,

nor can it contact third parties in an effort to obtain information via CIDs and other means as a

way to investigate Nexus.

"Covered person" means:

> (A)   any person that engages in offering or providing a
>       consumer financial product or service; and

> (B)   any affiliate of a person described in subparagraph (A) if
>       such affiliate acts as a service provider to such person.

12 U.S.C. § 5481(6). Importantly, the definition of a covered person under 12 U.S.C. § 5481(6)

incorporates the defined term "consumer financial product or service." This term, in pertinent

part, is defined by a laundry list of financial products or services, with the condition that such

products or services must be offered or provided for use by consumers primarily for personal,

family, or household purposes. 12 U.S.C. § 5481(15).

Nexus is not a "covered person." They merely assist Program Participants by facilitating

the immigration bond process. They provide "nonfinancial goods or services" within the

meaning of 12 U.S.C. § 5517(a); therefore, the CFPB does not have authority over Nexus.

Additionally, Nexus is neither an affiliate of nor a service provider to a covered person

within the meaning of 12 U.S.C. § 5481(6).  Under 12 U.S.C. § 5481(6)(B), in order to be

subject to the CFPB's authority, Nexus would need to be an "affiliate" of any covered person.

The term "affiliate" means any person that controls, is controlled by, or is under common control

with another person. 12 U.S.C. § 5481(6). The only entities with whom Nexus conducts business

12

are third-party bonding and surety companies. They have no relation with these companies, other than on a contractual basis. They certainly do not control, nor are they controlled, or under common control with, any of these third party bonding companies.

Even if Nexus was affiliated with these bonding companies, they are not a "service provider." The term "service provider" means "any person that provides a material service *to a covered person* in connection with the offering" of a financial product or service, "including a person that – (i) participates in designing, operating, or maintaining the consumer financial product or service; or (ii) processes transactions relating to the consumer financial product or service." 12 U.S.C. § 5481(26) (emphasis added).  Simply put, in order to be a "service provider" an entity must provide such services to a "covered person." The bonding companies with which Nexus deals are not covered persons. Pursuant to 12 U.S.C. § 5517(f), the CFPB has no authority to exercise any power "with respect to a person regulated by a State insurance regulator." To the knowledge of Nexus, the bonding companies with which it transacts business are regulated by state insurance regulators, at least with respect to immigration surety bonds obtained by Program Participants, and are therefore not subject to CFPB authority and cannot be covered persons. Because these bonding companies are not covered persons, Nexus cannot be "service provider[s]."

Perhaps the argument can be even more simplified. According to the CID, the CFPB wants to know whether Nexus extends or offers to extend credit. Under the Consumer Financial Protection Act, the Truth in Lending Act, and the Equal Credit Opportunity Act, the definition of "credit" includes the right granted to a consumer to defer payment of a debt. *See* 12 U.S.C. § 5481(7); 15 U.S.C. § 1602(f); 15 U.S.C. § 1691a(d).  Nexus charges a fee to Program Participants for the services provided. *See* **Exhibit A, ¶ 16**.  However, in the event a Program

13

Participant does not make his or her payment, Nexus does not seek any reimbursement. Further, Nexus does not loan money to the Program Participants with the expectation of repayment and the further expectation of interest charged on overdue payments. *See* **Exhibit A, ¶ 13.** If this is truly how the CFPB is attempting to broaden the definition of what constitutes "credit," then potentially individuals or most small businesses in America would be subject to the CFPB's enforcement authority.

Nexus appreciate that "[a]dministrative agencies wield broad power to gather information through the issuance of subpoenas." *Consumer Fin. Prot. Bureau v. Accrediting Council for Indep. Colls. & Sch.*, 854 F.3d 683, 688 (D.C. Cir. 2017) (quoting *Resolution Trust Corp. v. Thornton*, 41 F.3d 1539, 1544 (D.C. Cir. 1994)). Further, agencies may use CIDs as a tool to "investigate merely on suspicion that the law is being violated, or even just because [they] want[] assurance that it is not." *Id .*(quoting *U.S. v. Morton Salt Co.*, 338 U.S. 632, 642-43 (1950) (internal quotations omitted)).

However, as the court states in *Accrediting Council*, there are "real limits" on an agency's subpoena power. *Id.* at 689 (citing *FTC v. Ken Roberts Co.*, 276 F. 3d 583, 584-87 (D.C. Cir. 2001)). Federal courts guard against abuses of the subpoena-enforcement process and, "while the court's role . . . is narrow . . . within its confines it is potent[.]" *Id.* (quoting *SEC v. Arthur Young & Co.*, 584 F.2d 1018, 1024 (D.C. Cir. 1978)). As the court aptly put it:

> Agencies are not also afforded 'unfettered authority to cast about for potential wrongdoing . . .' Accordingly, courts will not enforce a CID when the investigation's subject matter is outside the agency's jurisdiction . . . Nor will they enforce a demand 'where there is ""too much indefiniteness or breadth"" in the items requested.'

*Id.* (internal citations omitted).

The CFPB plainly does not have jurisdiction over Nexus.  The "laws enforced by the CFPB do not address, regulate, or even tangentially implicate" the type of business in which Nexus engages. *See Consumer Fin. Prot. Bureau v. Accrediting Council for Indep. Colls. & Sch.*, 854 F.3d 683, 687 (D.C. Cir. 2017). Thus, Nexus is entitled to judgment as a matter of law.

## III. THE CFPB'S PETITION SHOULD BE DENIED BECAUSE THE CID IS NOT REASONABLY RELEVANT TO A LEGITIMATE AGENCY INQUIRY.

The requests at issue do not seek reasonably relevant information. The requests are not fashioned to specifically address the purpose of the investigation as provided in the CID, which is "to determine whether persons who provide products or services related to bonds posted on behalf of detainees are extending credit or offering to extend credit" and whether persons who provide these goods or services are engaged in unfair or deceptive acts or practices which violate the Consumer Financial Protection Act of 2010. Documents sought by CFPB must be "relevant to the investigation," which investigation must be sufficiently described in the Notification of Purpose in a CID. *Consumer Financial Protection Bureau v. Source for Public Data, LP*, 2010 WL 2443135 (N.D. Tex. 2017).

The requests here are not tailored to determine whether any person or entity involved in Nexus' GPS program is extending credit or offering to extend credit to detainees. Rather, the objectionable requests seek irrelevant employee data for nearly every current and former employee of Nexus, burdensome compilations of information from every single Program Participant file – in excess of 15,000 files – copies of documents from each Program Participant file and all communications records (paper and electronic) for all Program Participants, again, in excess of 15,000 files.  If the Court determines that Nexus fall within the jurisdiction afforded the CFPB, the requests at issue should be modified in such a way as to be narrowly tailored to the Notification of Purpose, such as an exemplar of the contract or contracts used by Nexus with

15

Program Participants, or a random sampling of Program Participant contracts and payment information. The CFPB using an improper scattergun approach to investigation and as such its CID should not be enforced, or at a minimum, significantly modified.

## IV. THE CID IS TOO INDEFINITE AS IT GOES WELL BEYOND AN INQUIRY TO ESTABLISH REGULATORY AUTHORITY.

A CID must "state the nature of the conduct constituting the alleged violation which is under investigation and the provision of law applicable to such violation." 12 U.S.C. § 5562(c)(2); *see also U.S. v. Morton Salt Co.*, 338 U.S. 632, 652 (1950). This clear statutory and common law requirement is vital to Nexus' ability to understand and respond to the CID, as well as to formulate objections to the same.

The CID targets "persons" who may provide "services" to bonding companies. The CID does not identify which persons it targets, or which services such persons provide. Additionally, the CID states its purpose is to determine whether such persons are engaging in unfair deceptive or abusive practices, without identifying which practices it may be targeting. Because it is excessively burdensome to understand the nature and scope of the CID, it should be set aside and the CFPB's Petition should be denied.

## <u>CONCLUSION</u>

For all of the reasons stated herein, Nexus respectfully requests that this Court grant its Motion for Summary Judgment and deny Defendants' Petition to Enforce Civil Investigative Demand.

Respectfully Submitted,

NEXUS SERVICES, INC. AND
LIBRE BY NEXUS, INC.

By:   ___*/s/ Paul G. Klockenbrink*___
Counsel

16

John R. Thomas, Jr., Esq. (DC Bar #1027981)
Paul G. Klockenbrink, Esq. (VA Bar #33032)
 (Admitted *Pro Hac Vice* 11/7/2017)
Catherine J. Huff, Esq. (VA Bar #78610)
 (Admitted *Pro Hac Vice* 11/13/2017)
GENTRY LOCKE
900 SunTrust Plaza, P.O. Box 40013
Roanoke, Virginia 24022-0013
Tele:  (540) 983-9300
Fax:   (540) 983-9400
Email: jthomas@gentrylocke.com
Email: klockenbrink@gentrylocke.com
Email: huff@gentrylocke.com

Mary Donne Peters, Esq. (GA Bar #478395)
 (Admission *Pro Hac Vice* 11/8/2017)
GORBY, PETERS & ASSOCIATES, LLC
2 Ravinia Drive
Suite 1500
Atlanta, Georgia 30346
Tele:  (404) 239-1150
Fax:   (404) 239-1179
Email: mpeters@gorbypeters.com
 *Counsel for Plaintiffs, Nexus Services, Inc.*
 *and Libre by Nexus, Inc.*

## CERTIFICATE OF SERVICE

 I hereby certify that on the 30th day of January, 2018, a copy of the foregoing was

electronically filed using the ECF system, which will send notice counsel of record for

Defendants:

Re: *Nexus Services Inc. & Libre by Nexus, Inc. v. Consumer Financial Protection Bureau, et al,*
 Case # No. 1:17-cv-02215-ABJ (USDC, D.D.C.):

    David A. King, Jr.
    Litigation and Oversight, Legal Div.
    CONSUMER FINANCIAL PROTECTION BUREAU
    1700 G. Street NW
    Washington, DC 20552
    Office: (202) 435-9289
    FAX (202) 435-7024
    Email: david.king@cfpb.gov

*Counsel for Defendants, Consumer Financial Protection Bureau &
Richard Cordray in his Official Capacity as Director of the Consumer
Financial Protection Bureau*

Re: *Consumer Financial Protection Bureau v. Nexus Services, Inc. & Libre By Nexus, Inc.,*
Case # No. 1:17-cv-02238-ABJ (USDC, D.D.C.):

Benjamin Zachary Konop (OH Bar No. 0073458)
CONSUMER FINANCIAL PROTECTION BUREAU
Office of General Counsel
1700 G Street, N.W.
Washington, DC 20552
Main: (202) 435-7265
Fax: (202) 435-7722
Email: benjamin.konop@cfpb.gov

*Counsel for Petitioner, Consumer Financial Protection Bureau*

*/s/  **Paul G. Klockenbrink***
Counsel

18